```
                                              ____FILED      ____ENTERED
                                              ____LODGED     ____RECEIVED
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

AUG 1 0 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **IN RE THE APPLICATION OF** ) <br> **THE BALTIMORE SUN TO ACCESS TO** ) <br> **CERTAIN SEALED COURT RECORDS** ) <br> ) <br> 501 N. Calvert Street ) <br> Baltimore, MD 21278 ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Misc. Action No. _____ <br><br> Related to: <br> Criminal Nos. 1:17-cr-00106-CCB-1 <br> 1:17-cr-00106-CCB-2 <br> 1:17-cr-00106-CCB-3 <br> 1:17-cr-00106-CCB-4 <br> 1:17-cr-00106-CCB-5 <br> 1:17-cr-00106-CCB-6 <br> 1:17-cr-00106-CCB-7 <br> 1:17-cr-00452-CCB-1 <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
APPLICATION OF THE BALTIMORE SUN TO
ACCESS CERTAIN SEALED COURT RECORDS**

### I.    PRELIMINARY STATEMENT

This case involves issues of significant and legitimate public interest concerning one of the biggest police corruption scandals in Baltimore's history. The Baltimore Sun seeks access to certain sealed court records, including dockets and docket entries, relating to the completed criminal investigation and prosecutions of eight members of the Baltimore Police Department's Gun Trace Task Force (hereinafter, the "GTTF Matter"). Specifically, The Baltimore Sun seeks an order unsealing any and all applications and supporting documents related to applications for the following warrants and authorizations, any court orders granting or denying any of the

following warrants and authorizations, and any other court records related to the following, such as returns, motions to seal, and dockets and docket entries[1]:

- Any search warrant, regardless of whether the warrant was issued or executed, and including warrants under the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§ 2701-2712, relating to the GTTF Matter (collectively, the "Search Warrant Materials");

- Authorization for the use of any pen register or trap and trace device pursuant to 18 U.S.C. §§ 3121-3127, regardless of whether such authorization was granted or a pen register or trap and trace device was used, relating to the GTTF Matter (collectively, the "PR/TT Materials"); and

- Any order pursuant to 18 U.S.C. § 2703(d) of the SCA, regardless of whether or not the order was issued or executed, related to the GTTF Matter (collectively, the "Section 2703(d) Materials").

The government's prosecution of the GTTF Matter remains the subject of intense public interest. Unsealing the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials will shed light on the government's investigation and prosecution of the GTTF Matter, which has concluded, and will also provide the public and the press with valuable insight into the government's investigatory methods and prosecution of police corruption more generally.

## II. BACKGROUND

### A. The Government's Investigation And Prosecution Of The GTTF Matter Is A Matter Of Ongoing Public Interest

Through the government's diligent investigation and prosecution, it has been revealed that an elite Baltimore police task force spent years plundering the city and its residents for

---

[1] Court records of this type are routinely maintained under seal and are generally not reflected on publicly available dockets. Accordingly, The Baltimore Sun does not know and cannot ascertain at this time the docket number(s) associated with the materials it seeks to unseal.

hundreds of thousands of dollars in cash, drugs, and jewelry. Eight people in the nine-member task force have been charged with crimes that amount to massive abuses of power and repeated violations of citizens' constitutional rights. Six have pleaded guilty, and two were convicted of several federal charges.[2]

The task force, as its name suggests, was originally intended to get guns and violent criminals off the streets. However, federal officials instead uncovered a corrupt police team who set people up for baseless searches, robbed people, planted fake evidence, and falsely recorded overtime. Many of the allegations have been confirmed by some of the task force's own members, including those who pleaded guilty to charges and took the stand against fellow ex-officers. The two officers who did not plead guilty were convicted by a federal jury of racketeering conspiracy, racketeering, and Hobbs Act robbery charges. As then-U.S. Attorney for Maryland Rod Rosenstein put it at the time of the indictment, "This is not about aggressive policing, it is about a criminal conspiracy. These are really simply robberies by people wearing police uniforms."

The Baltimore Sun has provided the public with extensive coverage of the GTTF Matter. In furtherance of its reporting, The Baltimore Sun has been granted leave to intervene in two GTTF Matter proceedings for the limited purpose of seeking to unseal sentencing memoranda submitted by GTTF officers. *See United States v. Allers*, Case 1:17-cr-00452-CCB, ECF No. 35 (D. Md. May 8, 2018); *United States v. Gondo*, Case 1:17-cr-00106-CCB, ECF No. 410 (D. Md. June 8, 2018).

---

[2] Daniel Thomas Hersl - 1:17-cr-00106-CCB-3 and Marcus Roosevelt Taylor - 1:17-cr-00106-CCB-6 were tried and convicted. The remaining six pleaded guilty: Momodu Bondeva Kenton Gondo - 1:17-cr-00106-CCB-1; Evodio Calles Hendrix - 1:17-cr-00106-CCB-2; Wayne Earl Jenkins - 1:17-cr-00106-CCB-4; Jemell Lamar Rayam - 1:17-cr-00106-CCB-5; Maurice Kilpatrick Ward - 1:17-cr-00106-CCB-7; and Thomas Allers - 1:17-cr-00452-CCB-1.

### B. Search Warrant Materials, PR/TT Materials, And Section 2703(D) Materials Related To The GTTF Prosecution Remain Under Seal

Documents filed with the Court in the GTTF prosecutions indicate that the government likely sought and obtained search warrants, pen register and/or trap and trace devices,[3] and/or Section 2703(d) orders[4] from the district court in the course of its investigation of eight GTTF members. For example, the unsealed indictment for each officer charged in the GTTF Matter references telephone calls with a confidential informant referred to as "CI-1," indicating that evidence was obtained as part of the investigation via the SCA. Indictment, *United States v. Gondo*, Case No. 17-cr-0106, ECF. No. 1 (D. Md. Feb. 23, 2017) (attached hereto as Ex. 1). The public dockets for the two GTTF Matter defendants who went to trial (Hersl and Taylor), include a pre-trial motion pertaining to the use of numerous recordings produced by the government in discovery. Mot. for Pretrial Procedures Regarding Recordings, *United States v. Taylor*, Case No. 17-cr-0106-CCB, ECF No. 209 (D. Md. Oct. 13, 2017) (attached hereto as Ex. 2). This motion also indicates that evidence was obtained during the GTTF Matter investigation pursuant to Section 2703(d) requests and orders.

---

[3] Pen registers and trap and trace devices are law enforcement surveillance tools the use of which is governed by 18 U.S.C. §§ 3121-3127 (the "Pen Register Act" or "PRA"). "Pen registers record telephone numbers, e-mail addresses, and other dialing, routing, addressing, or signaling information that is transmitted by instruments or facilities—such as telephones or computers—that carry wire or electronic communications." OIG, A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009—Executive Summary at 1 (June 2015), available at https://oig.justice.gov/reports/2015/o1506.pdf. "Trap and trace devices record similar information that is received by such instruments or facilities." *Id.*

[4] Under 18 U.S.C. § 2703 of the Stored Communications Act ("SCA") a court may issue an order authorizing the government to require electronic communication service or remote computing service providers to disclose the contents of a subscriber or consumer's wire or electronic communications in electronic storage for more than 180 days and certain communications metadata related to a subscriber or customer. 18 U.S.C. § 2703(a), (b)(1), (c)(1)-(2).

The Baltimore Sun is not aware of any search warrants, orders authorizing the use of pen registers and/or trap and trace devices, or Section 2703(d) orders, or any applications or other materials related thereto, connected to the GTTF Matter that have been unsealed. The Baltimore Sun therefore requests that such court records – including the relevant dockets and docket sheets – be unsealed, and that, to the extent necessary to facilitate such unsealing, the U.S. Attorney be directed to provide a list of the specific docket numbers associated with the applications and orders that are sought by this Application.

### III.   ARGUMENT

#### A.   The Press Has A Right To Seek Disclosure of Court Documents

Openness is "an indispensable attribute" of our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). It guards against unfairness and inequity in the application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*"). "[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) ("*Pub. Citizen*"). Perhaps just as importantly, access also "provide[s] the public with a more complete understanding of the judicial system, including a better perception of fairness." *Id.* As the U.S. Supreme Court has explained, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572. Here, in light of the U.S. Government's prosecution of public officers for conduct performed in discharging their official duties and the nature of the alleged crimes at issue, it is well recognized that the public's interest in monitoring these proceedings is particularly acute. *See, e.g., Waller v. Georgia*, 467 U.S. 39, 47 (1984) (noting

5

First Amendment presumption of access to hearings involving the conduct of police or prosecutors is particularly necessary).

The Baltimore Sun is a daily newspaper based in Baltimore, providing coverage of local, state, and national and international news, including proceedings in Maryland's state and federal courts. It is well settled that members of the press and public have a right to intervene in a judicial proceeding for the limited purpose of opposing the closure of court records or proceedings and "must be given an opportunity to be heard." *Globe Newspaper Co. v Superior Court*, 457 U.S. 596, 609 n.25 (1982). To that end, the Fourth Circuit has held that nonparties, like The Baltimore Sun here, should be permitted to intervene for the purpose of challenging limitations on the right of access. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (addressing district court's failure to follow Fourth Circuit sealing procedures on intervenor Baltimore Sun's motion for access to sealed court records); *Rosenfeld v. Montgomery Cty. Pub. Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001) (affirming third-party press intervenors' standing to intervene on appeal to seek review of sealing orders of the district court).

The U.S. Supreme Court has recognized that the news media plays a vital role in facilitating public monitoring of the judicial system:

> A responsible press has always been regarded the handmaiden of effective judicial administration, especially in the criminal field.... The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966). Thus, "[w]hile media representatives enjoy the same right of access as the public," they often "function[] as surrogates for the public" by, for example, attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large. *Richmond Newspapers*, 448 U.S. at 573; *see also United States v. Morison*,

844 F.2d 1057, 1081 (4th Cir. 1988) ("We have placed our faith in knowledge, not in ignorance, and for most, this means reliance on the press.").

Local Rule 105.11 gives effect to this right by permitting "interested parties," like The Baltimore Sun, to interpose objections to motions seeking to seal court records. L.R. 105.11. This rule derives from the presumption of openness that is required by the common law right of access. *See Simpson v. Technology Serv. Corp.*, 2015 WL 6447253, at *3 (D. Md. Oct. 22, 2015) ("This Local Rule endeavors to protect the common-law right to inspect and copy judicial records and documents"). Indeed, as the Supreme Court has recognized, public access to judicial proceedings "enhances the quality and safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and heightens "public respect for the judicial process," while permitting "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper*, 457 U.S. at 606. In accordance with these principles, the Fourth Circuit has long recognized that the public and press have a presumptive right to access documents that are filed in judicial proceedings, pursuant to "two independent sources: the common law and the First Amendment" – both of which apply here. *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal citations omitted).

### B. Public Access to the Sealed Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials Is Guaranteed by the Common Law and the First Amendment

"It is well settled that the public and the press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings," and that "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Pub. Citizen*, 749 F.3d at 265 (internal citations omitted). The common law right "extends to all judicial documents and records, and the presumption can be rebutted only by

showing that countervailing interests heavily outweigh the public interests in access." *Id.* at 265-66 (internal quotations omitted). The First Amendment right applies "only to particular judicial records and documents," and when applicable "access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Id.* at 266 (internal quotations and citations omitted). Under either standard, "[t]he public's right of access to judicial records and documents may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182.

"The common law presumes a right of the public to inspect and copy 'all judicial records and documents.'" *Va. Dep't of State Police*, 386 F.3d. at 575 (quoting *Stone*, 855 F.2d at 180). The common law right is grounded in "the public's ability to keep a 'watchful eye on the workings of public agencies.'" *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296, 1995 WL 541623, at *7 (4th Cir. 1995) (per curiam) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978)). Accordingly, the common law right is largely controlled by "whether public access plays a significant positive role in the functioning" of the proceedings. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). The common law right begins with a presumption that the public should have the right to access any judicial document, so "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988). The presumption of access may only be "rebutted if countervailing interests heavily outweigh the public interests in access." *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253); *see also Nixon*, 435 U.S. at 597-99. Performing this balancing analysis is "best left to the sound discretion of the [district] court." *Va. Dep't of State Police*, 386 at 575 (quoting *Nixon*, 435 U.S. at 598-99).

The First Amendment provides a "more rigorous" right of access for certain judicial records and documents. *Va. Dep't of State Police*, 386 F.3d at 576; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013). To determine whether the First Amendment right of access applies to a particular type of proceeding or document, courts must consider both "experience and logic," *i.e.*, (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8, 9; *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989). If both of these questions are answered affirmatively, the constitutional right of access applies. *Id.* Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180; *see also In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Va. Dep't of State Police*, 386 F.3d at 575 (citing *Press-Enter. Co.*, 478 U.S. at 15). Applying each test, it is evident that both the common law and First Amendment rights of access apply to the Search Warrant, Section 2703(d), and PR/TT Materials.

### 1. The Public Has a Common Law Right of Access to the Search Warrant, Section 2703(d), and PR/TT Materials

The Fourth Circuit has recognized the public's common law right of access to search warrant materials such as affidavits in support of search warrant applications. *See Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324, 330 (4th Cir. 1991). Affirming the lower court's decision to unseal a search warrant affidavit before trial, the court found that the

9

public had "significant interests" in access to search warrant materials, and "[i]n the context of the criminal justice system, these interests may be magnified." *Id.*; *see also Baltimore Sun Co.*, 886 F.2d at 64 (finding that "affidavits for search warrants are judicial records").[5]

As with search warrants, Section 2703(d) and PR/TT Materials are subject to the common law right of access. These investigative tools are analogous to search warrants, and access will allow public scrutiny of both the executive and judicial branch. The Fourth Circuit has had "no difficult holding that the actual § 2703(d) orders and subsequent orders issued by the court are judicial records." *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013) ("*In re United States*"). As with search warrants, Section 2703(d) orders and orders authorizing the use of PR/TT devices, as well as any subsequent, related court orders, are judicial records. *Id.* ("[I]t is commonsensical that judicially authored or created documents are judicial records.").

Keeping with this principle, courts have held that the common law right of access attaches to Section 2703(d) applications, motions, and orders, as well as orders authorizing the use of PR/TT devices. *See id.* (holding that motions filed under Section 2703(d) were judicial records because they were filed with the objective of obtaining judicial action or relief pertaining to Section 2703(d) orders); *In re Application of Reporters Committee For Freedom of the Press*

---

[5] Other federal courts of appeals have almost uniformly found that search warrant materials in closed investigations are judicial records to which the common law right of access applies. *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (stating that "the common law right of access to judicial documents may in some situations permit access to search warrant proceedings," including documents); *United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (finding that the common law right of access applies to search warrant applications and their supporting affidavits after the government's criminal investigation ended); *In re EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996) (holding that the common law right of access applies to a search warrant affidavit); *In re Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (finding that a search warrant application is "a public document subject to a common law right of access" at the post-investigation stage).

*For Access to Certain Sealed Court Records*, Case No. 1:17-cv-00169-RDB, ECF No. 18 (D. Md. June 27, 2017) (granting access to nine miscellaneous dockets believed to contain search warrant, PR/TT, and other Section 2703(d) materials); *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 830 F. Supp. 2d 114, 151-52 (E.D. Va. 2011) (applying the common law right of access balancing test to materials related to a Section 2703(d) order); *In re Sealing & Non-Disclosure of PR/TT/2703(d) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) ("*In re Sealing*") (writing that "opinions, orders, judgments, docket sheets, and other information related to the court's public functions" are in the "top drawer of judicial records" that are "hardly ever closed to the public"). Accordingly, the Section 2703(d) orders, orders authorizing the use of PR/TT devices, and any subsequent, related court orders issued in connection with the GTTF Matter are judicial records subject to a strong presumption of access under the common law.

In addition, just as this Court and other appellate courts have held that applications and supporting affidavits for search warrants are judicial records, applications and supporting affidavits for Section 2703(d) orders and orders authorizing the use of PR/TT devices are likewise judicial records because, among other things, they are considered by the court in determining whether to issue the order being sought by the government. *See Baltimore Sun Co.*, 886 F.2d at 64 ("We therefore conclude that affidavits for search warrants are judicial records."). Section 2703(d) provides that the court shall issue a Section 2703(d) order "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe" the communications content or communications metadata "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Thus the applications and supporting affidavits form the basis for the court's determination of whether the government has

met the statutory standard or issuance of a Section 2703(d) order, which is "essentially a reasonable suspicion standard." *In re United States*, 707 F.3d at 287. Likewise, before a court is required to enter an order authorizing the installation and use of a pen register or trap and trace device, it must conclude that "the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). The application thus plays a decisive role in the court's determination as to whether use of a PR/TT device should be authorized.

Finally, motions related to Section 2703(d) orders and PR/TT orders other than applications also play a key role in the adjudicatory process and therefore are judicial records. Such derivative motions are filed with the objective of obtaining judicial action or relief, and the court relies upon such filings in granting or denying the relief sought. Consistent with this reasoning, the Fourth Circuit has held that derivative Section 2703(d) motions are judicial records because they play a role in the adjudicative process; namely, "they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *In re United States*, 707 F.3d at 291. For these reasons, any derivative Section 2703(d) and PR/TT motions are judicial records to which the common law right of access applies.

### 2. The Public Has a First Amendment Right of Access to the Search Warrant, Section 2703(d), and PR/TT Materials

The Fourth Circuit has recognized a right of access under the common law to search warrant materials, and not the First Amendment, where the request was made "in the interval between execution of the warrants and indictment." *Baltimore Sun Co.*, 886 F.2d at 62. The Circuit has never addressed the question of whether the First Amendment right of access would apply to search warrant materials after the investigation ended, let alone after criminal cases have been tried. The Baltimore Sun submits that it is likewise not necessary to reach that question in

this matter, because the common law right suffices to require access in the circumstances presented here.

However, if this Court were to reach the question, it should also find a right under the First Amendment. Courts in other circuits that have reached the issue have held that there is a First Amendment right of access to search warrant materials after the conclusion of the government's investigation. *See United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124-25 (C.D. Cal. 2004), *aff'd on the grounds*, 135 Fed. App'x 69 (9th Cir. 2005); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("*In re Gunn*") (finding First Amendment right of access to warrant materials even while investigation is still ongoing). *See also In re Application of Reporters Committee For Freedom of the Press For Access to Certain Sealed Court Records*, Case No. 1:17-cv-00169-RDB, ECF No. 18 (D. Md. June 27, 2017) (granting access to nine miscellaneous dockets believed to contain search warrant, PR/TT, and other Section 2703(d) materials).

Based on this precedent and the application of the experience and logic test, the First Amendment right of access applies to the Search Warrant, Section 2703(d), and PR/TT Materials related to the GTTF Matter. The government has concluded its investigation and prosecutions of the GTTF Matter. As other courts have recognized, post-investigation search warrant materials "have historically been available to the public." *In re Application of N.Y. Times*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008). In addition, public access to these materials will play "a significant positive role in the functioning" of the process at issue, *Press Enterprise II*, 478 U.S. at 8, "serve[] as a check on the judiciary," *In re Application of N.Y. Times*, 585 F. Supp. 2d at 90, and serve as a "curb on prosecutorial ... misconduct," *In re Gunn*, 855 F.2d at 573.

The Section 2703(d) Materials and PR/TT Materials are analogous to search warrant materials from closed investigations. Applying the experience and logic test, Section 2703(d) Materials and PR/TT Materials are encompassed in the tradition of public access to post-investigation search warrant materials. *See United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) ("A new procedure that substituted for an older one would presumably be evaluated by the tradition of access to the older procedure"); *see also United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998) (the experience prong may be satisfied by establishing a history of access to information "reasonably analogous" to the information sought). As the court recognized in *In re Application of N.Y. Times*, "post-investigation warrant materials ... have historically been available to the public," as shown by the "routine historical practice" of filing warrant applications and receipts with the clerk of court without seal. 585 F. Supp. 2d at 88. Moreover, the court found that the historic common law right of access to warrant materials, which was "an appropriate consideration to take into account when examining the scope of First Amendment," also "weigh[ed] strongly in favor of a First Amendment qualified right of access to warrant materials." *Id.* at 89. The Section 2703(d) and PR/TT Materials must be evaluated in the context of this same tradition of access. *See El-Sayegh*, 131 F.3d at 161; *Gonzales*, 150 F.3d at 1256.

Logic also strongly supports a First Amendment right of access to the Section 2703(d) and PR/TT Materials because the use of PR/TT devices function like warrants, but may be obtained on a showing lower than the probable cause standard that must be satisfied for issuance of a search warrant under Fed. R. Crim. P. 41, *see* 18 U.S.C. § 2703(d); 18 U.S.C. § 3123(a)(1), and access to such materials arguably plays in even more "significant positive role in the functioning of the criminal justice system." *In re Application of N.Y. Times*, 585 F. Supp. 2d at

90. Access to the Section 2703(d) and PR/TT Materials here will allow the public to scrutinize the arguments put forth by the government in connection with the GTFF Matter investigation, as well as any court order granting or denying such applications. In this manner, access will allow the public to serve as a check on prosecutors and "is necessary in the long run so that the public can judge the product of the courts in a given case." *Virginia Dep't of State Police*, 386 F.3d at 575.

### C. The Press and the Public Have Both A Common Law and Constitutional Right to Access the Court Dockets

The common law right extends to dockets because sealing dockets in their entirety creates a "two-tier system, open and closed," that erodes "[c]onfidence in the accuracy of [the court's] records," and "the authority of its rulings and respect due its judgments." *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 765 F.2d 823, 826 (9th Cir. 1985). The Fourth Circuit, among others, has recognized that the constitutional right of access extends to court dockets. *See Pub. Citizen*, 749 F.3d at 268 (holding First Amendment right of access to dockets in civil proceedings); *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (reversing order sealing criminal docket sheets as overbroad and incompatible with First Amendment presumptive right of access because "we cannot understand how the docket entry sheet could be prejudicial"); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93-94 (2d Cir. 2004); *Tri-County Wholesale Distrib., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012). The public and the press accordingly have a right to access the docket sheets reflecting the Search Warrant, Section 2703(d), and PR/TT Materials related to the GTTF Matter investigations and prosecutions.

### D. The Circumstances Here Support the Presumption of Access to the Search Warrant Materials, the PR/TT Materials, and the Section 2703(d) Materials

The common law presumption "in favor of access," *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d at 329, can be overcome only upon a showing that countervailing interests "heavily outweigh" the public's interest in access. *Rushford*, 846 F.2d at 253. The party seeking to overcome this presumption bears the burden of showing "some significant interest" outweighing the presumption. *Virginia Dep't of State Police*, 386 F.3d at 575. In evaluating a request for access to court records under the common law, courts in the Fourth Circuit will consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Id.*

Under this test, the Search Warrant, Section 2703(d), and PR/TT Materials should be unsealed. First, none of the court records at issue are sought for an improper purpose – The Baltimore Sun seeks access for the benefit of the public at large to enhance understanding of a notable and far-reaching police misconduct controversy. Second, the sealed materials related to the investigations of eight police officers who have already either pleaded guilty or been found guilty of the crimes alleged. Accordingly, even though the Search Warrant, Section 2703(d), and PR/TT Materials are sealed, much of their underlying subject matter is in the public forum, a factor weighing in favor of disclosure. Moreover, the government no longer has an interest in keeping these records sealed because the GTTF prosecutions have ended. *Cf. In re Section 2703(d)*, 787 F. Supp. 2d 430, 442-43 (E.D. Va. 2011) (because investigation was ongoing, "the government's interest in keeping these documents sealed for the time being outweighs petitioners' interest in access to them"); *In re Application of the U.S. for an Order Pursuant to*

16

*18 U.S.C. Section 2703(d)*, 830 F. Supp. 2d at 151-52 (applying the common law balancing test to a Section 2703(d) application and supporting materials, and finding the government had a "compelling interest in protecting its ongoing investigation").

On the other side of the common law balancing test, the public interest in access to the Search Warrant, Section 2703(d), and PR/TT Materials is exceptionally strong. The GTTF Matter investigation and prosecutions are matters of considerable public concern, and the public has "legitimate concerns about methods and techniques of [the] ... investigation," *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d at 330-31, including how the government obtained and used search warrants, Section 2703(d) orders, and pen registers and trap and trace devices in its investigation. The Fourth Circuit and the U.S. Supreme Court have recognized the importance of the public interest in "keep[ing] a watchful eye on the workings of public agencies" and "publish[ing] information concerning the operation of government," *id.* (quoting *Nixon*, 435 U.S. at 597-98), and that this interest is "magnified" in the context of the criminal justice system. *Id.*

The First Amendment right of access is "more rigorous" and "more demanding of public disclosure than the common law public right." *Johnson v. Baltimore City Police Dep't*, 2013 WL 497868, at *2 (D. Md. Feb. 7, 2013) (quoting *Rushford*, 846 F.2d at 253). A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise I,* 464 U.S. at 510). Put another way, the constitutional right of access is overcome only if "(1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no

17

alternatives to closure that would adequately protect that compelling interest." *In re Wash. Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986).

Here, because the government's investigation and prosecution of the eight convicted members of the GTTF Matter has concluded, there is no compelling interest in the continued sealing of the Search Warrant, Section 2703(d), and PR/TT Materials. Moreover, even if portions of the records sought by this Application implicated an ongoing law enforcement interest, courts have found that sealing must be narrowly tailored. *See Johnson*, 2013 WL 497868, at *3-5 ("If a court record is subject to the First Amendment right of public access, the record may be sealed 'only on the basis of a compelling government interest, and only if the denial is narrowly tailored to serve that interest"); *Press-Enterprise I*, 468 U.S. at 510 (closure of records must be narrowly tailored to serve the compelling government interest). Thus, even if there were some compelling interest to justify sealing portions of the Search Warrant, Section 2703(d), or PR/TT Materials, redaction and not wholesale sealing would be the appropriate means of addressing that interest.

## IV. CONCLUSION

The press and public have a right of access to the Search Warrant, Section 2703(d), and PR/TT Materials related to the government's completed investigation and prosecution of the GTTF Matter. For the foregoing reasons, The Baltimore Sun respectfully asks the Court to enter an order to unseal the Search Warrant, Section 2703(d) and PR/TT Materials.

Dated: August 9, 2018

Respectfully submitted,

*/s/ Nathan Siegel*

Nathan Siegel (D. Md. Bar No. 11169)
nathansiegel@dwt.com
Lisa B. Zycherman (D. Md. Bar No. 16969)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Ph: 202-973-4200; Fax: 202-973-4499

*Counsel for The Baltimore Sun*